## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| PNC Bank, National Association, ) <br> a national banking association, and ) <br> PNC Equipment Finance, LLC, a Delaware ) <br> limited liability company, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Five-Star Audiovisual, Inc., an ) <br> Illinois corporation, ) <br> ) <br> Defendant. ) | Case No. 21-cv-05419 <br><br> Honorable John Z. Lee |
| Five Star Audiovisual, Inc, ) <br> ) <br> Counter-Plaintiff, ) <br> v. ) <br> ) <br> PNC Bank, National Association, ) <br> a national banking association, and ) <br> PNC Equipment Finance, LLC, a Delaware ) <br> limited liability company ) <br> ) <br> Counter-Defendants. ) | |

## **COUNTERCLAIM**

Five-Star Audiovisual, Inc., by and through its attorney, John A. Lipinsky of the law firm of Clingen Callow & McLean LLC, for its Counterclaim against PNC Bank, National Association and PNC Equipment Finance, LLC alleges as follows:

### **Parties**

1. Five Star Audiovisual, Inc. ("Five Star") is an Illinois corporation with its principal place of business located in Naperville, Illinois. For nearly twenty-five years, Five-Star has been delivering premium in-house audiovisual solutions for the hospitality industry with clientele

{00643700.DOCX /v. 1 }

ranging from elite hotels and upscale resorts to well-known corporations and convention centers all across the United States and Canada.

2. PNC Bank National Association ("PNC Bank") is a national banking association that maintains its principal offices in Pittsburgh Pennsylvania. At all times relevant, PNC Bank was the financial institution who provided banking services to Five Star and where Five Star maintained its corporate accounts.

3. PNC Equipment Finance, LLC ("PNCEF") is a limited liability company that provides equipment financing to clients throughout the US and Canada. PNCEF is a wholly owned subsidiary of PNC Bank.

## Background

### I. The August 22, 2016 Master Loan Agreement with PNC Bank

4. On August 22, 2016, Five Star entered into a Master Loan Agreement with PNC Bank (the "PNC Master Loan Agreement"). A true and correct copy of the PNC Master Loan Agreement is attached hereto as **Exhibit 1**.

5. The PNC Master Loan Agreement was not for, or limited to, a single loan or dollar amount. Rather, it was an agreement for one or more loans which would be documented by separate promissory notes, each of which could have its own interest rate, repayment provisions, etc.

6. The PNC Master Loan Agreement contained a number of Affirmative Covenants at Section 4. This included a requirement at Section 4.7 that Five Star establish and maintain its primary depository accounts at PNC Bank.

**II.  The August 3, 2016 Master Loan & Security Agreement with PNCEF**

7. On August 3, 2016, Five Star entered into a Master Loan and Security Agreement (the "PNCEF Master Agreement").  A true and correct copy of the PNCEF Master Agreement is attached hereto as **Exhibit 2**.

8. The PNCEF Master Agreement was not for, or limited to, a single loan or dollar amount.  Rather, it was an agreement for one or more loans which would be documented by separate promissory notes, each of which could have its own interest rate, repayment provisions, etc.

9. From 2018 through 2020, Five Star took out loans from PNC Bank via its subsidiary PNCEF pursuant to the terms of the PNCEF Master Agreement (collectively referred to herein as the "Loans").

**A.  The January 25, 2018 $1.5 Million Loan from PNCEF**

10. On January 25, 2018, Five Star executed a five-year Term Note ("Loan 9000") with PNCEF in the amount of $1,500,000 at a fixed rate of 3.89%.

11. Loan 9000 was payable over five (5) years in sixty (60) equal payments in the amount of $27,550.39 which would commence on February 28, 2018, with a maturity date of January 31, 2023.

**B.  The October 15, 2018 - $300,000 Loan from PNCEF**

12. On October 15, 2018, Five Star executed a Term Note ("Loan 831-1") with PNCEF in the amount of Three Hundred Thousand Dollars ($300,000) at fixed rate of 4.67%.

13. Loan 831-1 was payable over five (5) years in sixty (60) equal installments of $5,616.13 and maturing on October 22, 2023.

### C. The June 10, 2019 $1 Million Equipment Line of Credit Note with PNCEF

14. On June 10, 2019, Five Star executed a Line of Credit Note with PNCEF in the amount of $1 million allowing it to request advances under the August 3, 2016, Master Loan Agreement with PNCEF. The advances would be secured by the property listed in each request for advance. Payments would be due and payable as articulated in each request.

15. Two advances were taken under the June 10, 2019, Line of Credit: i) Loan 831-3 in the amount of $390,933.00 was disbursed on July 3, 2019; and ii) Loan 831-4 in the amount of $74,707.00 was disbursed on July 3, 2019.

### D. February 5, 2020 - $1.5 Million Line of Credit Loan with PNCEF

16. On February 5, 2020, Five Star executed a Line of Credit Note in the amount of $1.5 Million with PNCEF allowing it to request advances under the August 3, 2016, Master Loan Agreement with PNCEF up to that amount until the Line of Credit Note's Expiration Date on February 4, 2021. Five Star could borrow up to $1.5 Million during this time but was not allowed to reborrow after repayment.

17. Two advances were taken under February 5, 2020, Line of Credit: i) Loan 831-6 in the amount of $759,520.00 was disbursed on February 13, 2020; and ii) Loan 831-7 in the amount of $485,568.00 was disbursed on August 10, 2020.

### III. February 7, 2020 $2,750,000 Line of Credit with PNC Bank

18. On February 7, 2020, Five Star executed an Amended and Restated Revolving Line of Credit (the "2020 Line of Credit") with PNC Bank providing Five Star access to cash advances to up to $2,750,000.00. A true and correct copy of the 2020 Line of Credit is attached hereto as **Exhibit 3.**

19. The 2020 Line of Credit provided that Five Star could borrow, repay and reborrow under the Note until it expired on February 4, 2021 (the "Expiration Date") or such later date designated by the Bank.

20. Interest accrued on any amount outstanding at an interest rate equal to the Daily LIBOR Rate plus 1.6%.

21. The 2020 Line of Credit only obligated Five Star to make monthly payments of accrued interest on the 22nd of each month until the Expiration Date, when the outstanding principal balance and any remaining accrued but unpaid interest was due.

**IV. March 2020 – Working Cash / Line of Credit / Investment - Sweep Rider**

22. In March 2020, Five Star executed a Working Cash, Line of Credit, Investment Sweep Rider (the "Sweep Rider"). A true and correct copy of the Sweep Rider is attached hereto as **Exhibit 4.**

23. The terms of the Sweep Rider were incorporated into the 2020 Line of Credit Note. *See* page 1 paragraph 1 of the Sweep Rider.

24. The Sweep Rider was to be a mechanism whereby PNC could automatically transfer money from Five Star's Operating Account to pay the 2020 Line of Credit or into an investment option such as the Money Market Mutual Fund or the PNC Nassau Sweep.

25. PNC was not required to execute a sweep of the Operating Account on any given day.

26. PNC exercised discretion over when to use its powers to sweep the Operating Account.

**V. April 4, 2020 Paycheck Protection Program – First Application**

27. On March 2020 the Coronavirus Aid, Relief and Economic Security (CARES) Act was passed and signed into law to address issues related to the onset of the COVID-19 pandemic.

28. As part of the CARES Act, small businesses such as Five Star with 500 or fewer employees were eligible to apply for Paycheck Protection Program (PPP) Loans. The CARES Act allocated $349 billion to the PPP loan initiative in an effort to stabilize small businesses.

29. The funds could be used for expenses such as payroll costs, including benefits, interest on mortgage obligations, rent and utilities; but the primary purpose of a PPP loans was to help businesses retain their existing staff. Businesses who used the funds to do this could be eligible for a 100% forgiveness incentive.

30. Five Star worked closely with PNC Bank to navigate the rules and regulations of the CARES Act and the Paycheck Protection Program.

31. Working with and under the guidance of PNC Bank with whom Five Star had an established banking history, on April 4, 2020, Five Star prepared and submitted its application for a PPP Loan (the "PPP Application"). A true and correct copy of the PPP Application is attached hereto as **Exhibit 5**.

32. Five Star relied upon PNC Bank's expertise in the areas of regulations and finance to understand the PPP rules and requirements.

33. Five Star's application stated it was seeking a PPP Loan to cover payroll, utilities and other essential costs to maintain its business.

34. In its application, Five Star disclosed an Average Monthly Payroll for 294 Employees as $1,162,730. Utilizing the formula on the application, Five Star's PPP Application sought $2,906,825.00.

35. The second page of the PPP Application contained certifications required to be acknowledged by Five Star, including:

- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

- Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

- The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

- The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

- I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

*See* Exhibit 5, page 2.

36. Each of these terms as well as others listed on the PPP Application was acknowledged and accepted by Five Star. It was made clear that failure to abide by the terms of PPP put loan forgiveness at risk or could subject the borrower to other penalties.

37. Five Star's PPP Application was approved by the SBA in the amount of $2,906.800.00 ("PPP Loan") and PNC Bank was authorized to fund the loan.

38. PNC Bank did not advise Five Star to segregate the PPP Funds in an account separate from its Operating Account.

**VI. PNC Bank Sweeps Much of the PPP Funds**

39. On Friday April 17, 2020, Five Star was only utilizing a portion of its 2020 Line of Credit, carrying a balance of $1,857,394.90.

40. On Monday, April 20, 2020, PNC Bank funded the PPP Loan and the $2,906,800.00 was deposited into Five Star's Corporate Business Account at PNC Bank, the account it was required to maintain pursuant to the PNC Bank Master Loan Agreement.

41. Also on Monday, April 20, 2020, without warning or notice to Five Star, PNC Bank unilaterally took $1,857,394.90 from the PPP Loan (the "Swept PPP Funds") and applied it to the 2020 Line of Credit balance to eliminate the entire balance PNC Bank was carrying.

42. Once the PPP Loan was funded by PNC Bank, Five Star (mistakenly) believed it had access to the full $2,906,800 and intended to use it only for the reasons it was approved so as not to jeopardize its ability to seek forgiveness of the loan.

43. Five Star was unaware that PNC Bank had taken $1,857,394.90, leaving it with only $1,049,405.00 in its Operating Account (the "Remaining PPP Funds").

44. By June 17, 2020, Remaining PPP Funds were exhausted.

45. On June 17, 2020, Five Star's Operating Account balance should have contained $1,857,394.90 in unused PPP Funds.

46. Beginning on June 17, 2020, Five Star's Operating Account began to be supplemented by PNC Bank causing draws on the 2020 Line of Credit to replace the Swept PPP Funds.

47. By September 22, 2020, the 2020 Line of Credit was exhausted, and Five Star was indebted to PNC Bank in the maximum amount which the 2020 Line of Credit had been approved.

48. On February 4, 2021, the 2020 Line of Credit Matured without being extended or renewed by PNC Bank.

**VII.     Five Star Discovers the Sweep from the PPP Loan Proceeds**

49.     In or about September 2020, Five Star discovered that the funds in its Operating Account it believed were proceeds of the PPP Loan were actually draws initiated by PNC Bank on its 2020 Line of Credit.

50.     Upon discovering this, Five Star developed a plan to repay the maxed out 2020 Line of Credit and requested a meeting with PNC Bank.

51.     Steve Preze, the individual with whom Five Star had worked closely at PNC Bank in completing the PPP Application, came to Five Star's office for a strategy meeting. It soon became apparent that PNC Bank's only interest was getting Robert Tippin, the principal of Five Star, to execute a personal guaranty of Five Star's debts.

52.     Five Star attempted to work with PNC Bank with regard to its 2020 Line of Credit but PNC Bank refused.

53.     PNC Bank had exacerbated Five Star's financial difficulties at the height of the pandemic when it protected its own interests by taking $1,857,394.80 in PPP Funds and applying it to the balance it was carrying on the 2020 Line of Credit.

54.     PNC Bank used the Swept PPP Funds to pay down the 2020 Line of Credit for its own benefit, to lessen its risk or exposure to non-payment.

55.     PNC Bank used the Swept PPP Funds to pay down the 2020 Line of Credit despite knowing PPP Funds were only permitted by legislation and the SBA to be used for very limited purposes.

56.     PNC Bank used the Swept PPP Funds to benefit itself without considering the potential harm to Five Star or risk to Five Star ability to obtain forgiveness of the PPP Loan.

57. Because the Swept PPP Funds were not available to Five Star, PNC Bank, unbeknownst to Five Star, increased Five Star's indebtedness to PNC Bank via draws from the 2020 Line of Credit.

58. PNC Bank's draws on the 2020 Line of Credit caused Five Star to owe $1,857,394.90 more than it should have (plus interest) to replace the Swept PPP Funds to meet obligations for which the no interest, forgivable PPP Loan was approved.

### VIII. PNC Bank Declares All Five Star Loans, Including PNCEF Loans, to be in Default

59. Up to the second quarter of 2021, Five Star was current in its payments on account of Loans with PNCEF, specifically including: Loan 9000; Loan 831-1; Loan 831-3; Loan 831-4; Loan 831-6; and 831-7 (collectively the "PNCEF Loans")

60. There was no default on any of the PNCEF Loans on account of nonpayment, late payment or because any had reached maturity. In fact, the earliest maturity date for any PNCEF Loan was not until January 2023.

61. Despite the fact the PNCEF Loans were all current and had not reached maturity, PNC Bank declared each to be in default based on a technicality - the 2020 Line of Credit with PNC Bank had reached maturity without being paid in full.

62. PNC Bank declared the PNCEF Loans to be in default as a punitive and coercive measure when it was unable to otherwise force the personal guaranty of Five Star's principal regarding the 2020 Line of Credit.

63. On account of PNC Bank declaring the PNCEF Loans to be in technical default, Five Star is being charged with interest at a higher, default rate.

64. Since declaring the PNCEF Loans to be in technical default, PNC Bank has refused to accept any payment from Five Star in its effort to maximize the interest and resulting damages to Five Star as a further coercive and/or punitive measure.

**Count I – Breach of Covenant of Good Faith and Fair Dealing**

65. Five Star incorporates the allegations in paragraphs 1 through 65 as if fully set forth herein.

66. PNC Bank took advantage of Five Star by sweeping PPP Funds it had assisted Five Star in obtaining.

67. PNC Bank was aware of the purpose of the PPP Loan and the permitted uses of the PPP Funds because it had assisted Five Star in preparing the PPP Application and funded the PPP Loan after approval by the SBA.

68. PNC Bank breached its duty to act in good faith and to deal fairly with Five Star by taking the Swept PPP Funds and applying it to pay off the 2020 Line of Credit to enrich or protect itself by reducing its financial exposure during the early days of a global pandemic.

69. Five Star did not contemplate at the time it executed the Sweep Agreement that PNC Bank would take advantage of its ability to sweep Five Star's Operating Account.

70. Five Star did not contemplate at the time it applied for a PPP Loan through its trusted banker that PNC Bank would take advantage of Five Star's ability to be approved for a PPP loan.

71. Five Star was unaware of PNC Bank's intentions with regard to the PPP Funds.

72. PNC Bank never advised Five Star to segregate or deposit the PPP Funds in a new account not subject to the Sweep Rider.

73. PNC Bank had the discretion under the Sweep Rider allowing it to decide when and if to exercise its ability to effect a sweep the Operating Account evidenced by the fact it did not perform a sweep on a daily basis.

74. PNC Bank abused its discretion in a manner contrary to the reasonable expectations of Five Star.

{00643700.DOCX /v. 1 }
11

75. PNC Bank's actions deprived Five Star of benefits it reasonably anticipated.

76. PNC Bank's actions caused Five Star it to incur unforeseen, avoidable, or otherwise punitive liabilities.

77. PNC Bank has failed to act in good faith by refusing to work with Five Star to formulate a reasonable plan to repay the bloated 2020 Line of Credit which PNC Bank had exhausted without Five Star's knowledge.

78. PNC Bank's actions in declaring the PNCEF Loans to be in default at a time when all payments were current and none had matured were retaliatory and intended to coerce Five Star's principal into providing PNC Bank with his personal guaranty.

WHEREFORE, Five Star Audiovisual, Inc. requests that the Court enter judgment in its favor and against Defendants PNC Bank National Association and PNC Equipment Finance, LLC in the amount of $1,857,394.90, plus interest and attorneys' fees to be proven and for such other relief as this Court deems just and equitable.

> Respectfully submitted,
>
> Five-Star AudioVisual, Inc.
>
> By:*/s/ John A. Lipinsky*
>     One of its Attorneys

John A. Lipinsky (ARDC #620678)
Gregory P. Adamo (ARDC #6285603)
Clingen, Callow & McLean, LLC
2300 Cabot Drive, Suite 500
Lisle, Illinois 60532
(630) 588-2094
lipinsky@ccmlawyer.com
adamo@ccmlawyer.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, I caused the ***Counterclaim*** to be served on all counsel of record via the CM/ECF electronic filing system to the parties listed below at or before 5:00 p.m. from Lisle, Illinois.

By: */s/Angela C. Burza*

Matthew L. Hendricksen
Plunkett Cooney P.C.
221 N. LaSalle Street, Suite 3500
Chicago, IL 60601
 mhendricksen@plunketcooney.com