IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PNC BANK, N.A., and PNC EQUIPMENT FINANCE, LLC, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 21 C 5419<br>)<br>) Judge Virginia Kendall |
| FIVE-STAR AUDIOVISUAL, INC., | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Five-Star Audiovisual, Inc. ("Five-Star") borrowed several million dollars in commercial loans from Plaintiffs PNC Bank, N.A. ("PNC Bank") and PNC Equipment Finance, LLC ("PNCEF") (collectively, "PNC"). Alleging that Five Star failed to repay some of these loans, PNC sued Five-Star for breach of contract. In turn, Five-Star counterclaimed for breach of the duty of good faith and fair dealing. PNC moved to dismiss the counterclaim for failure to state a claim. For the reasons explained below, PNC's motion is granted.

## BACKGROUND

Five-Star provides audiovisual equipment to hotels, resorts, and event venues. (Dkt. 27 ¶ 1). To finance this business, Five-Star has taken out numerous loans from PNC, with whom Five-Star also keeps its corporate bank accounts. (*Id.* ¶ 2). The loans at issue here are governed by two "master" agreements: one with PNC Bank ("PNC Master Loan Agreement"), and one with PNCEF, ("PNCEF Master Loan Agreement"). (Dkt. 27-2).[1] Under the Master Agreements, Five-Star executed a series of notes from 2018 to 2020 with PNCEF, which authorized cash advances

---

[1] The Court may consider the loan documents attached to the counterclaim at the motion to dismiss stage because they are referenced throughout Five-Star's counterclaim and are central to that claim, and neither party disputes their authenticity. *Fin. Fiduciaries, LLC v. Gannett Co.*, No. 21-2016, 2022 WL 3585002, at *5 (7th Cir. Aug. 22, 2022).

1

totaling over $2,000,000, (Dkt. 27 ¶¶ 12, 14–17), and a line of credit agreement with PNC on February 7, 2020, which authorized Five-Star to access cash advances up to $2,750,000 until its expiration on February 4, 2021, (*Id.* ¶ 18). Five-Star was only obligated to pay interest on the line of credit until it expired, at which point the principal and any accrued interest would become due. (*Id.* ¶ 21).

Five-Star executed a "sweep rider" to the 2/7/20 Line of Credit in March 2020. (*See id*. ¶¶ 22–23). The Sweep Rider provided that when Five Star's commercial checking account balance exceeded a certain amount, PNC will automatically transfer (or "sweep") money out of the checking account to pay debts accrued under the 2/7/20 Line of Credit. (*Id.* ¶ 24; Dkt. 27-4 at 2–3). At the end of any business day, the agreement stated, "any Final Available Balance in the [checking account] shall be automatically applied to the repayment of the outstanding principal balance of the Line of Credit." (Dkt. 27-4 at 4). Additionally, when the balance in Five-Star's checking account fell below zero, PNC would "draw" money from the 2/7/20 Line of Credit to replenish the checking account "in an amount equal to the lesser of (a) the amount necessary to bring the balance in the [checking account] to zero dollars . . . , and (b) the amount, if any, available under the Line of Credit." (*Id.* at 3).

In response to the COVID-19 pandemic, Congress enacted the Paycheck Protection Program ("PPP"), which authorized small and mid-sized businesses to apply for loans, guaranteed by the federal government, to cover payroll costs, lease or mortgage payments, and operating costs during the pandemic. (Dkt. 27 ¶¶ 28–29); *see* 15 U.S.C. § 636(a)(36). Five-Star applied and was approved for a $2,906,800 PPP loan. (Dkt. 27 ¶¶ 31, 35–37). The United States Small Business Administration ("SBA") authorized PNC to fund the loan, and PNC disbursed the $2,906,800 into Five-Star's PNC corporate checking account on April 20, 2020. (*Id*. ¶ 37). The same day after

depositing the PPP money, PNC "swept" $1,857,394.90 from Five-Star's checking account to pay off the entirety of the principal and interest balance that Five-Star was carrying on the 2/7/20 Line of Credit. (*Id.* ¶ 41). The sweep left only $1,049,405.00 in PPP money in the checking account. (*Id.* ¶ 43). Five-Star, however, was unaware that PNC had swept nearly two-thirds of the PPP money out of its checking account; it believed it had access to the full $2,906,800. (*Id.* ¶ 42).

By June 17, 2020, Five-Star had spent the remaining $1,049,405.00 in PPP money, and PNC began to "draw" money from the 2/7/20 Line of Credit to bring the checking account balance back to zero each day. (*Id.* ¶¶ 44–46). Because of the draws, Five-Star reached the limit on the 2/7/20 Line of Credit on September 22, 2020. (*Id.* ¶ 47). Around this time, Five-Star discovered that the funds in its checking account, which it had believed to be PPP funds, were actually draws from the 2/7/20 Line of Credit. (*Id.* ¶ 49). Five-Star tried to negotiate with PNC with respect to the 2/7/20 Line of Credit, but the negotiations were fruitless, and Five-Star was unable to pay down the balance. (*Id.* ¶¶ 52, 61). When the 2/7/20 Line of Credit matured on February 4, 2021, PNC declared five of the loans that Five-Star had taken out from PNCEF during the three years prior to be in default. (*Id.* ¶ 61).

PNC filed a lawsuit in this Court for breach of contract against Five-Star, seeking recovery of the outstanding balance of the 2/7/20 Line of Credit and the five PNCEF loans. (Dkt. 1); 28 U.S.C. § 1332. Five-Star filed a counterclaim against PNC for breach of the duty of good faith based on, among other things, PNC's sweep of $1,857,394.90 in PPP funds from Five-Star's checking account. (Dkt. 27). PNC has moved under Rule 12(b)(6) to dismiss that counterclaim for failure to state a claim. (Dkt. 30).

3

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (cleaned up). But "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678).

**ANALYSIS**

Five-Star's counterclaim alleges that PNC breached the duty of good faith in numerous respects. "[E]very contract contains an implied covenant of good faith and fair dealing." *Eckhardt v. Idea Factory, LLC*, No. 1-21-0813, 2021 WL 4476808, at *7 (Ill. App. Ct. Sept. 30, 2021) (citing *McCleary v. Wells Fargo Sec., L.L.C.*, 29 N.E.3d 1087, 1093 (Ill. App. Ct. 2015)). The duty of good faith requires that each contracting party refrain from taking advantage of the other party "in a way that could not have been contemplated at the time the contract was drafted" and from doing anything to "destroy the other party's right to receive the benefit of the contract." *Id.* (quoting *McCleary*, 29 N.E.3d at 1093). In practice, this means that when a contract vests a party with discretion, the party must exercise that discretion reasonably, and not "arbitrarily, capriciously, or

4

in a manner inconsistent with the reasonable expectation of the parties." *JPMorgan Chase Bank, N.A. v. E.-W. Logistics, L.L.C.*, 9 N.E.3d 104, 118 (Ill. App. Ct. 2014) (quoting *Bank One, Springfield v. Roscetti*, 723 N.E.2d 755, 764 (Ill. App. Ct. 1999)).

As a threshold matter, Illinois law does not recognize an independent cause of action based on the duty of good faith—untied from a claim for breach of contract—except in a narrow class of insurance-settlement cases. *See, e.g.*, *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) ("[B]reach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except 'in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.'" (quoting *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001)); *D'Attomo v. Baumbeck*, 36 N.E.3d 892, 911–12 (Ill. App. Ct. 2015) ("Although the covenant of good faith and fair dealing is implied in every contract, the supreme court held that an independent cause of action for breach of that implied covenant does not exist except in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued a policyholder." (internal citation omitted)); *7-Eleven, Inc. v. Dar*, 757 N.E.2d 515, 523 (Ill. App. Ct. 2001) ("[O]ur supreme court reiterated its position that an independent tort for breach of an implied duty of good faith and fair dealing does not exist except in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy-holder.").

Five-Star maintains this rule is "not absolute," citing *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126. But *Voyles* hurts rather than helps Five-Star's case. There, the plaintiff sued a mortgage company for communicating false information about her to credit reporting agencies. *Id.* at 1127. The Supreme Court of Illinois established the now-familiar rule that a plaintiff cannot not assert an independent cause of action for breach of the duty of good faith because such a claim

5

does not exist except in "the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder" when settlement is in the policyholder's interest. *Id.* at 1131 (citing *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903–04 (Ill. 1996)). The court reasoned that, in the duty-to-settle context, "tort law remains an appropriate ground on which to evaluate the insurer's conduct" because the plaintiff typically has no remedy against the insurer under the insurance contract, which often does not contain language defining the insurer's duties when faced with a settlement offer. *Id.* By contrast, the *Voyles* plaintiff had "specific remedies [available] under the parties' contract; thus, [a] cause of action for violation of a duty of good faith and fair dealing would, as a practical matter, add little to" her ability to recover. *Id.*

Like the plaintiff in *Voyles*, Five-Star cannot bring an action for breach of the duty of good faith. Illinois law generally does not permit this claim, and the facts here do not fit within the narrow exception. *See Zeidler v. A&W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("[T]he district court correctly dismissed on the pleadings the [plaintiffs'] remaining claim that [defendant] breached an independent covenant of good faith and fair dealing."); *see also APS Sports*, 299 F.3d at 628; *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019); *City of Rockford v. Mallinckrodt ARD Inc.*, 360 F. Supp. 3d 730, 769–70 (N.D. Ill. 2019); *Cohn v. Guaranteed Rate, Inc.*, 130 F. Supp. 3d 1198, 1210 (N.D. Ill. 2015).

The counterclaim also fares no better if the Court construes it, as other courts have done,[2] as one for breach of contract based on a purported violation of the duty rather than an independent

---

[2] *See, e.g.*, *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1106 (7th Cir. 1997); *Roby v. Liberty Mut. Pers. Ins. Co.*, No. 20 C 6832, 2022 WL 204610, at *3 (N.D. Ill. Jan. 24, 2022); *Ride Right, LLC v. Pace Suburban Bus*, No. 18-cv-01119, 2018 WL 6446410, at *5 (N.D. Ill. Dec. 10, 2018); *Newman v. Spirit Airlines, Inc.*, No. 12 C 2897, 2012 WL 3134422, at *2 (N.D. Ill. July 27, 2012); *see also Juza v. Wells Fargo Bank, N.A.*, 794 F. App'x 529, 536 (7th Cir. 2020) ("[T]he basis of the claim [for breach of the duty of good faith] is important. 'It is true that Illinois does not recognize such an independent cause of action *in tort*, but a contractually-based claim for breach of the implied covenant does exist.'" (emphasis in original) (quoting *In re Wireless Tel. 911 Calls Litig.*, No. MDL-1521, 2005 WL 1564978, at *13 (N.D. Ill. June 3, 2005))).

breach of the duty of good faith. To state that claim, a plaintiff must plausibly allege that (1) the defendant possessed discretion under the loan agreements, which (2) was exercised "arbitrarily, capriciously, or in a manner inconsistent with the [parties'] reasonable expectation." *JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC*, 9 N.E.3d 104, 118 (Ill. App. Ct. 2014). Five-Star cannot do so with respect to any of its allegations of bad faith. Beginning with the swept PPP funds, while Five-Star pleads that PNC had discretion concerning whether to sweep the funds, the terms of the Sweep Rider explicitly contradict that claim. The Sweep Rider states that if there is an outstanding principal balance under the 2/7/20 Line of Credit and the balance of Five-Star's checking account is positive, PNC "will" sweep the balance of the checking account to pay down the balance on the 2/7/20 Line of Credit. (Dkt. 27-4 at 2). PNC's sweeping of the PPP money was not an exercise of discretion; it was mandated by the contract's express language. (*See id.*) When an express contractual term conflicts with an asserted duty of good faith, the express language controls, and a claim for duty of good faith fails. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395–96 (7th Cir. 2003); *JPMorgan Chase,* 9 N.E.3d at 118.

Five-Star's other allegations of bad faith seem to rest on its view that PNC acted unfairly by strictly enforcing PNC's rights under the loan agreements. Five-Star points out, for example, that the Master Agreements and the 2/7/20 Line of Credit each permitted PNC to extend the maturity date for the 2/7/20 Line of Credit, which PNC did not do. But Five-Star has not pleaded any facts to suggest that PNC acted arbitrarily, capriciously, or outside the parties' expectations in declining to extend the loan. *See JP Morgan*, 9 N.E.3d at 118. Just as they provided that the balance of the 2/7/20 Line of Credit would be due and payable on February 4, 2021, the agreements also expressly authorized PNC to declare the PNCEF loans in default following the maturation of the 2/7/20 Line of Credit: specifically, Section 1(a) of the PNCEF Master Agreement provides

PNC the authority to declare the loans executed under the PNCEF Master Agreement in default if *any* loan to PNC or PNCEF is in default. (Dkt. 27-2 at 2). Illinois law entitles parties to enforce contracts "to the letter" even if doing so creates harsh consequences. *JPMorgan Chase*, 9 N.E.3d at 118 (quoting *Bank One*, 723 N.E.2d at 764). Therefore, PNC's refusal to grant an extension on the 2/7/20 Line of Credit—or perhaps more accurately, its decision to enforce the maturity date expressly provided for in the agreement—was not a breach of the duty of good faith. *See, e.g.*, *Cont'l Bank N.A. v. Modansky*, 997 F.2d 309, 312 (7th Cir. 1993); *Bank of Am., N.A. v. 108 N. State Retail LLC*, 928 N.E.2d 42, 56 (Ill. App. Ct. 2010).[3]

      PNC asks the Court to dismiss the claim with prejudice. There is, however, a presumption in favor of granting a plaintiff at least one chance to amend unless amendment would be futile or otherwise unwarranted. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). PNC's conclusory argument that Five-Star cannot possibly plead facts showing that PNC plausibly breached its duty of good faith in light of the loan agreements' express terms is not enough to justify dismissing Five-Star's counterclaim with prejudice. Accordingly, the Court will grant Five-Star leave to amend.

---

[3] Five-Star also avers that PNC acted in bad faith by threatening Five-Star with a default on the PNCEF loans so that Five-Star's principal would agree to execute a personal guaranty for the loans. But it was not bad faith for PNC to threaten to do something that the parties' agreement expressly authorized it to do. *See Cont'l Bank*, 997 F.2d at 312.

## **CONCLUSION**

For these reasons, PNC's motion to dismiss Five-Star's counterclaim is granted. The dismissal shall be without prejudice to the filing of an amended counterclaim no later than 10/21/22. If no such counterclaim is filed by that date, the dismissal of the counterclaim shall convert to one with prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: September 28, 2022