**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PNC BANK, N.A., and PNC EQUIPMENT FINANCE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 5419 |
| v. | ) ) | Judge Virginia Kendall |
| FIVE-STAR AUDIOVISUAL, INC., | ) ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs PNC Bank, N.A. and PNC Equipment Finance, LLC (collectively, "PNC") lent millions of dollars to Defendant Five-Star Audiovisual, Inc. In a February 2020 contract, Five-Star agreed that any balance in its checking account would be used to automatically pay off a separate line of credit taken out. A few months later, Five-Star secured a loan from the federal government to cover expenses related to the COVID-19 pandemic and deposited $2.9 million dollars into its checking account. PNC "swept" some of the funds out of the checking account to pay down the line of credit pursuant to the earlier agreement.

PNC later sued Five-Star for breach of contract, alleging that Five-Star failed to repay certain loans. Five-Star initially counterclaimed for breach of the duty of good faith and fair dealing. PNC moved to dismiss for failure to state a claim, and this Court granted the motion without prejudice. Five-Star then filed an amended counterclaim alleging breach of contract, unjust enrichment in the alternative, negligence, negligent misrepresentation, fraud, and setoff. PNC once again moves to dismiss the counterclaims for failure to state a claim. (Dkt. 81). For the following reasons, PNC's motion is granted. (*Id.*)

**BACKGROUND**

Five-Star is an Illinois corporation that provides audiovisual services and equipment for business and entertainment events. (Dkt. 70 ¶¶ 7, 9). Over the course of the four years leading up to the COVID-19 pandemic, Five-Star took out loans and lines of credit totaling over $7 million from PNC, a national bank headquartered in Pennsylvania. (*Id.* ¶ 16). One of those lines of credit, executed on February 7, 2020, ("The Line of Credit") authorized cash advances up to $2,750,000 to Five-Star, with interest payments due monthly and the outstanding principal and accrued interest due upon expiration of the Line of Credit on February 4, 2021. (*Id.* ¶¶ 18–21).

After Five-Star's controller met with PNC in February 2020 to discuss changes to Five-Star's commercial checking account with PNC, Five-Star executed a "Sweep Rider" agreement. (*Id.* ¶ 40; Dkt. 70-1). The Sweep Rider provided that when the balance in Five-Star's commercial checking account exceeded a specified amount, PNC would automatically debit funds to pay debts accrued under the Line of Credit. (Dkt. 70 ¶ 41). Under the terms of the Sweep Rider, "any Final Available Balance in the [Five-Star checking account] shall be automatically applied to the repayment of the outstanding principal balance of the Line of Credit." (Dkt. 70-1 at 4). The Sweep Rider also provided that if the balance in Five-Star's checking account dropped below zero, PNC would make an advance under Five-Star's Line of Credit to return the checking account balance to "an amount equal to the lesser of (a) the amount necessary to bring the balance in the [checking account] to zero dollars … , and (b) the amount, if any, available under the Line of Credit." (*Id.* at 3).

After PNC and Five-Star entered into the Sweep Rider, they discussed the Paycheck Protection Program ("PPP"), an emergency loan initiative enacted by Congress is response to the COVID-19 pandemic. (Dkt. 70 ¶ 22). Under the PPP, small and medium-sized business could

receive emergency funding, some of which would be forgivable if used for purposes such as maintaining payroll and paying for health care benefits, rent, mortgage obligations, and utilities. (*Id.* ¶¶ 23, 29, 34). Five-Star worked with PNC to complete the application. (*Id.* ¶ 32). Five-Star was approved for a PPP loan, and PNC disbursed $2,906,800 into Five-Star's corporate operating account on April 20, 2020, after the parties had executed a loan agreement (the "PPP Note"). (*Id.* ¶¶ 45, 49).

That same day, PNC "swept" $1,857,394.90 in PPP funds from Five-Star's operating account to pay off the balance on the Line of Credit, leaving $1,049,405.00 remaining in Five-Star's operating account. (*Id.* ¶¶ 50, 51). Five-Star was unaware that the sweep of approximately two-thirds of its PPP funds had occurred, and by June 17, 2020, it had spent all its remaining PPP funds. (*Id.* ¶¶ 52, 53). Five-Star began to draw additional funds from the Line of Credit to continue covering expenses that it had intended to cover using funds from the PPP loan. (*Id.* ¶ 53). While the PPP loan funds were subject to a one percent interest rate and a deferral period during which Five-Star was not obligated to make any loan payments, the Line of Credit on which Five-Star had to draw was subject to a higher interest rate and did not provide a deferral period. (*Id.* ¶¶ 54, 55).

By September 22, 2020, Five-Star had maxed out the Line of Credit. (*Id.* ¶ 56). On October 13, 2021, PNC filed suit against Five-Star for breach of contract, seeking to recover all outstanding debts owed to it by Five-Star, including those due under the Line of Credit. (*Id.* ¶ 59; Dkt. 1). On January 21, 2022, Five-Star filed a counterclaim alleging breach of good faith and fair dealing. (Dkt. 27). This Court dismissed Five-Star's counterclaim with leave to amend. (Dkt. 60). Five-

3

Star filed its amended counterclaim on October 21, 2022. PNC moves again to dismiss for failure to state a claim. (Dkt. 81).

## **LEGAL STANDARD**

A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). When considering a motion to dismiss, courts "accept the allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021) (cleaned up). But "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (cleaned up) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

Five-Star brings a six-count counterclaim for (1) breach of contract, (2) unjust enrichment, (3) negligence, (4) negligent misrepresentation, (5) fraud, and (6) setoff.[1] (*See generally* Dkt. 70). The Court considers each claim in turn.

## I.      **Breach of Contract (Count I)**

"[A] plaintiff asserting a breach of contract claim must plead: (1) the existence of a valid and enforceable contract; (2) defendant's breach of contract; and (3) damages resulting from the

---

[1] Although PNC disagrees that Delaware law applies (instead of Illinois), it acknowledges—and the Court agrees—that "the applicable law is not determinative of the issues." (Dkt. 92 at 2 n.2).

breach." *Raquet v. Allstate Corp.,* 348 F. Supp. 3d 775, 781 (N.D. Ill. 2018); *see also Tani v. FPL/Next Era Energy*, 811 F.Supp.2d 1004, 1023 (D. Del. 2011). Here, the parties only debate whether Five-Star sufficiently alleged a breach in its amended counterclaim. It has not.

As a threshold matter, while the PPP Note did not expressly incorporate the terms of the Sweep Rider, the Sweep Rider itself was "incorporated into and made part of … certain other financing documents and security agreements executed by and between Borrower and Bank," (Dkt. 70-1 at 1), and the Sweep Rider applied to the same operating account into which the PPP funds were deposited.[2] Therefore, the related contracts are read together. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 731 (7th Cir. 1996) ("[W]e see no reason why we should depart from the basic rule that related documents must be read together."); *CA, Inc. v. Ingres Corp.*, No. 4300-VCS, 2009 WL 4575009, at *47 (Del. Ch. Dec. 7, 2009) ("Traditionally, courts try to give a consistent reading to interrelated agreements.").

Viewed together, the terms of the Sweep Rider permitted PNC's sweep of the PPP funds, and nothing in the PPP Note limited the continued applicability of the Sweep Rider to funds deposited in Five-Star's operating account. Five-Star argues that, to the extent any ambiguity is created by the "intersection of the provisions," it should not be decided at the motion-to-dismiss stage. (Dkt. 84 at 7 n.1). The existence of an unambiguous contract between the parties authorizing the exact conduct does not, however, create any uncertainty. The outcome might be harsh—but PNC is entitled to enforce its contract to the letter. *See Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 475 (Del. Ch. 2022).

---

[2] "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Here, the existence of the Sweep Rider, which was attached as an exhibit to Five-Star's counterclaims, controls.

Notwithstanding the clear language, Five-Star argues that PNC breached the terms of the PPP Note in three ways: (1) by failing to honor the deferral period that the PPP Note provided for, (2) by failing to provide the PPP funds at a one percent interest rate, and (3) by applying the swept funds to uses not permitted by the CARES Act. (Dkt. 70 ¶¶ 34, 54; Dkt. 84 at 5–6). None carry the day. First, PNC's sweep of the account on the day the PPP funds were deposited was not done the enforce the PPP Note but rather to collect amounts due under the Line of Credit. Second, although PNC's sweep of the PPP funds resulted in Five-Star's needing to draw additional funds from the Line of Credit at a higher interest rate, the PPP funds themselves were not subject to a higher interest rate than provided for in the PPP note at any time.[3] Finally, the CARES Act had no effect on the contractual language. Five-Star cannot point to a specific section of the law that invalidated the Sweep Rider. Nor does a general provision of the PPP Note invalidate the agreed-upon contract.

## II.    Unjust Enrichment (Count II)

Unjust enrichment occurs when the defendant unjustly retained a benefit to the plaintiff's detriment, and the retention of that benefit is "against the fundamental principles of justice or equity and good conscience." *In re Verizon Insurance Coverage Appeals*, 222 A.3d 566 (Del. 2019); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). A plaintiff, however, cannot recover for unjust enrichment when there is an express contract between the parties. *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012) ("It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust

---

[3] Similarly, Five-Star's argues, as to its negligence count, that it was exposed to "the risk that the PPP loan would not be eligible for forgiveness." (Dkt. 70 ¶ 81). Even if this risk constituted a breach, Five-Star must also plead damages resulting from that breach. "Merely showing that a contract has been breached without demonstrating actual damage does not suffice … to state a claim for breach of contract." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). Five-Star has not alleged that PNC's sweep of the PPP funds caused it, for example, to become ineligible for forgiveness of its PPP loan, so it has failed to state a claim on this alleged breach of contract as well.

enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim.") (citing *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del.1979)).

The parties here clearly formed a contract by executing the Sweep Rider, so Five-Star cannot recover under an unjust-enrichment theory. Despite the clear existence of a contract, Five-Star maintains that its unjust enrichment counterclaim should not be dismissed because "PNC itself questions whether the PPP Note is the exclusive measure of Five-Star's rights." (Dkt. 84 at 10). It is true that an unjust-enrichment claim can survive where the validity of the contract is in doubt or the contract was entered into based on wrongdoing or mistake. But Five-Star has not alleged that the Sweep Rider is an invalid contract or that the "claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud) or mistake."[4] *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, No. CV-12067-VCG, 2018 WL 1559936, at *16 (Del. Ch. Mar. 28, 2018). The Sweep Rider's validity is undisputed, and there are no questions about implied promises or claims arising outside the express provisions of Five-Star and PNC's contracts.

## III. Negligence and Negligent Misrepresentation (Counts III & IV)

To state a claim for negligence or negligent misrepresentation, Five-Star must establish that PNC owed it a duty of care and breached that duty of care resulting in measurable damages. *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010). Five-Star asserts that PNC breached

---

[4] Five-Star points to two Delaware cases in which unjust enrichment claims survived motions to dismiss. Both are distinguishable. In *Lyons Ins. Agency, Inc. v. Kirtley*, the Delaware Superior Court determined that there were still material facts in issue as to the validity and enforceability of an employment agreement between the parties. 2019 WL 1244605, at *2 (Del. Super. Mar. 18, 2019). And in *LVI Grp.*, the Delaware Chancery Court found the defendants had adequately pled that the parties' merger agreement was entered into based on the defendant's fraud. 2018 WL 1559936, at *17. Unlike those cases, there is no dispute over the validity of the Sweep Rider, a contract which the parties entered into before the PPP Note and which mandated PNC's sweeping of the checking account balance,.

a duty to "provide accurate information regarding the opaque and novel PPP application process." (Dkt. 84 at 11). Although the parties' business relationship is rooted in contracts, "a claim for economic loss may be pursued in tort as well as contract where … the claim is founded on a duty of care that the law imposed on the defendant irrespective of the terms of the contract." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 617 (7th Cir. 2001). Under Delaware law though, an interested party to a contract only owes a duty not to provide *false* information regarding a transaction. *See, e.g.*, *Livery Coach Sols., LLC v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 646 (D. Del. 2017); *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. 1990).

Here, PNC never provided false information to Five-Star and, thus, did not violate its duty of care. PNC only informed Five-Star about the PPP program, recommended that it seek a loan through the federal government, and assisted the company in the process. Five-Star protests that the process was "opaque and novel," (Dkt. 84 at 11), but that problem lies with the federal government, the program's creator. Moreover, Five-Star could access everything through publicly available sources. The lender itself "does not have a duty to disclose facts which are 'readily available from other sources.'" *MB Fin. Bank, N.A. v. Planet Airways, Inc.,* No. 04 C 0893, 2005 WL 1189597, at *2 (N.D. Ill. May 4, 2005) (citing *Continental Bank, N.A. v. Everett*, 760 F. Supp. 713, 718 (N.D. Ill. 1991). Finally, the fact that the Sweep Rider, signed just weeks prior to the execution of the PPP Note, remained operative was known by Five-Star. PNC had no duty, then, to disclose the signed and agreed-to document.

## IV.    Fraud (Count V)

The elements of common law fraud are "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to

act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).[5] For the fourth element, the plaintiff must establish that justifiable reliance on the defendant's representation. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

Five-Star did not reasonably rely on PNC's oral statements about the benefits of the PPP loan. Five-Star executed the Sweep Rider shortly after its controller met with Five-Star's contact at PNC in February 2021. (Dkt. 70 ¶¶ 36–40). Then, a few months later, Five-Star executed the PPP Note. (Dkt. 70 ¶ 45). Although PNC did not refer to the terms of the Sweep Rider in the course of the parties' discussions about the terms of the PPP Note, Five-Star certainly was aware that it had just recently agreed to the Sweep Rider, which mandated the sweep of funds from its commercial checking account. Five-Star overlooks the significance of the already-existing terms of the Sweep Rider, as "[t]here is no actionable fraud without reasonable reliance, and reliance cannot be reasonable when it presupposes a failure to read clear language." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 592 (7th Cir. 2003). Moreover, courts are especially reluctant to set aside contracts based on reliance on external representations when the parties are sophisticated businesses, like both PNC and Five-Star. *See Great Lakes Chemical Corp. v. Pharmacia Corp.*, 788 A.2d 544 (Del. Ch. 2001). Five-Star may regret not opening a new checking account to separate its PPP funds, but a contract cannot be invalidated because it was a bad bargain for one side.

---

[5] Fraud claims require a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "[A] complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

**V.     Setoff (Count VI)**

A "setoff" is a "counter demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action." *Madison M. Gray v. Hitchens Bros., Inc.*, No. 1987-11-020, 1989 WL 848982, *2 (Del. Ch. July 19, 1989). Because Five-Star has failed to state a claim for any of its counterclaims, there is no setoff.

## CONCLUSION

For these reasons, PNC's motion to dismiss Five-Star's counterclaim is granted. (Dkt. 81). Because the Court already granted Five-Star leave to amend its counterclaims, they are dismissed with prejudice.

Virginia M. Kendall
United States District Judge

Date: June 16, 2023

10