## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PNC BANK, N.A., and PNC
EQUIPMENT FINANCE, LLC.,

    Plaintiffs-Counterdefendants.

v.

FIVE-STAR AUDIOVISUAL, INC.

    Defendant-Counterplaintiff.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 21 C 5419

Judge Virginia Kendall

## OPINION AND ORDER

After succeeding against Five-Star Audiovisual, Inc.'s counterclaims, amended counterclaims, and appeal, the PNC Plaintiffs-Counterdefendants move for attorneys' fees. (Dkt. 140). PNC seeks $205,644.00 in fees incurred defending against Five-Star's claims from July 11, 2023, through March 15, 2024, exclusive of prejudgment interest. (Dkts. 140, 144). The Court grants PNC's motion in full exclusive of prejudgment interest.

## BACKGROUND

The Court granted PNC's motion to dismiss Five-Star's amended counterclaims with prejudice on June 16, 2023. (Dkt. 104). Five-Star filed its notice of appeal on July 14, 2023. (Dkt. 111). The Seventh Circuit affirmed the Court's dismissal on March 15, 2024. (Dkt. 137). PNC initially moved for attorneys' fees on November 9, 2023, seeking $82,313.50 in fees. (Dkt. 129 at 5); (*see also* Dkts. 133, 134) (Five-Star's opposition and PNC's reply). PNC intended "to submit a supplemental petition for fees incurred in connection with pursuing the fee petition and appeal." (*Id.* at 5, n.1). PNC filed its supplemental petition on June 17, 2024, seeking $205,644.00 in fees incurred pursuing its initial motion for attorneys' fees and defending against Five-Star's amended

1

counterclaims and appeal. (Dkt. 140 at 4); (*see also* Dkts. 143, 144) (Five-Star's opposition and PNC's reply).

## **LEGAL STANDARD**

"An indemnity agreement is to be construed as any other contract, and under the rules of contract construction, the intention of the parties is the paramount concern." *Charter Bank v. Eckert*, 223 Ill. App. 3d 918, 925 (1992) (citing *Plepel v. Nied*, 106 Ill. App. 3d 282 (1982)); *Buenz v. Frontline Transp. Co.*, 227 Ill. 2d 302, 308 (2008); *Pekin Ins. Co. v. Designed Equip. Acquisition Corp.*, 2016 IL App (1st) 151689, ¶ 25. "When construing an agreement to indemnify, the agreement must be given a fair and reasonable interpretation based upon a consideration of all the language and provisions." *Id.* (citing *Bates v. Select Lake City Theater Operating Co.*, 78 Ill. App. 3d 153 (1979)); *Henry v. Waller*, 2012 IL App (1st) 102068, ¶ 15. "The interpretation of an indemnity agreement also depends upon the factual setting of the case." *Id.* (citing *Svenson v. Miller Builders, Inc.*, 74 Ill. App. 3d 75 (1979)). "An indemnity agreement must be set forth in clear and explicit language so that an indemnitor's obligations are manifestly determinable." *Id.* (citing *Burlington Northern Railroad Co. v. Pawnee Motor Service, Inc.*, 171 Ill. App. 3d 1043 (1988)); *Pekin*, 2016 IL App (1st) 151689, ¶ 25. "Although indemnity agreements are not void, they nevertheless are not favored and must be strictly construed." *Id.* (citing *Bates,* 78 Ill. App. 3d at 155)); *Bituminous Cas. Co. v. Plano Molding Co.*, 2015 IL App (2d) 140292, ¶ 8.

## **ANALYSIS**

Five-Star entered into several agreements with PNC. The controlling agreement is the "Amended and Restated Revolving Line of Credit Note." (Dkt. 1-1) ("Line of Credit Agreement"); (Dkt. 140 at 5). The Line of Credit Agreement contains an explicit and unambiguous indemnification provision: "The Borrower agrees to indemnify . . . the Bank . . . from and against

2

any and all claims, damages, losses, liabilities and expenses . . . including all fees and charges of internal or external counsel . . . in connection with or arising out of or relating to the matters referred to in this Note or in the other Loan Documents or the use of any advance hereunder, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Borrower[.]" (*Id.* at 6-7). The parties identified no provision in any later agreement that nullifies this indemnification provision. (Dkts. 140, 143, 144). Furthermore, and critically so, the PPP Note—the formed the basis for Five-Star's breach of contract claim in its amended counterclaims—contains an unambiguous indemnification provision that is identical to the one in the Line of Credit Agreement. (*Compare* Dkt. 70-1 at 18-19 *with* Dkt. 1-1 at 6-7).

Five-Star raises three arguments why it should not pay PNC's attorneys fees: (1) the language from the Line of Credit Agreement does not cover the PPP Note; (2) neither the Sweep Rider Amendment nor any later amendment provides a basis for indemnification for its claims under the PPP Note; (3) its counterclaims arise solely from PNC's conduct relating to the PPP Note—not the Line of Credit Agreement or the Sweep Rider Amendment. (Dkt. 143 at 9-13).

All of Five-Star's arguments are meritless because the PPP Note contains an indemnification provision that covers all of Five-Star's allegations. (Dkt. 70-1 at 18-19). Five-Star expressly agreed to indemnify PNC—and pay all of PNC's attorney fees—for its breach of contract claim for the PPP Note: "The Borrower agrees to indemnify . . . the Bank . . . from and against any and all claims, damages, losses, liabilities and expenses . . . including all fees and charges of internal or external counsel . . . in connection with or arising out of or relating to the matters referred to in this Note or in the other Loan Documents or the use of any advance hereunder, whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Borrower[.]" (*Id.*) This unambiguous language requires Five-Star to

pay PNC's attorneys' fees for Five-Star's breach of contract count—and all allegations that fall under it—from its amended counterclaims. *Id.*; *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) ("If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning."); *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363 (2006) ("If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written."). As all of Five-Star's claims arise from the same set of facts as its breach of contract claim, this provision forecloses all of Five-Star's arguments.

Even if the indemnity provision in the PPP Note does not cover Five-Star's remaining counts, the indemnity provision in the Line of Credit Agreement does. Five-Star contracted with PNC to amend the Credit Line Agreement to add the Sweep Rider Amendment. (Dkt. 70, ¶¶ 36-41). The Sweep Rider Amendment permitted PNC to debit funds from Five Star's checking account to pay down its outstanding balances from its line of credit. (*Id.*, ¶ 37). Five-Star applied for a Paycheck Protection Program loan under the CARES Act. (*Id.*, ¶¶ 22-35, 42-60). The U.S. Government granted the application, approving a PPP loan worth $2,906,800. (*Id.*, ¶ 45). Five-Star deposited the $2,906,800 into its PNC checking account. (*Id.*, ¶ 49). Under the Sweep Rider Amendment, PNC swept $1,857,394.90 from Five Star's checking account to pay down its line of credit. (*Id.*, ¶ 50).

Each count of Five-Star's amended counterclaims is predicated on these facts. (*Id.*, ¶¶ 61, 70-76, 83, 92, 104). Five-Star alleged that "PNC Bank's loans to Five Star included a revolving line of credit providing Five Star access to cash advances to up to $2,750,000.00." (*Id.*, ¶ 18). It alleged that its president signed the Sweep Rider Amendment which "provided that when Five Star's [checking account] balance exceeded a certain amount, PNC Bank would debit money out of [it] to pay debts accrued under the Line of Credit." (*Id.*, ¶¶ 40-41). It alleged that "the PPP funds

. . . were deposited into Five Star's" checking account and "PNC Bank caused $1,857,394.90 in PPP funds to be swept from Five Star's [checking account] to pay off the Line of Credit." (*Id.*, ¶¶ 49-50). Five-Star explicitly "incorporate[d] the allegations in" all "foregoing paragraphs" when alleging its breach of the "PPP Note"—thereby incorporating every fact concerning the Line of Credit Agreement and Sweep Rider Amendment into its claim for breach of the PPP Note. (*Id.*, ¶ 61). If that were not all, the pinnacle allegation for its breach of the PPP Note comes straight from the Line of Credit Agreement and Sweep Rider Amendment: "By seizing $1,857,394.90 on April 20, 2020 from Five Star's" checking account "to pay off the Line of Credit, PNC Bank breached the PPP Note." (*Id.*, ¶ 68).[1] The Court therefore finds that all of Five-Star's allegations fall within the scope of the Line of Credit Agreement's indemnification provision. *Thompson*, 241 Ill. 2d at 441; *Valley Forge*, 223 Ill. 2d at 363.[2]

There is, however, an exception in the indemnity provision. The "indemnity agreement shall not apply to any Claim . . . solely attributable to an Indemnified Party's gross negligence or willful misconduct[.]" (Dkt. 1-1 at 6-7). The Court dismissed Five-Star's claims—including for negligence, negligent misrepresentation, and fraud—with prejudice. (Dkt. 104). The exception does not apply. (Dkt. 1-1 at 6-7).

Lastly, Five-Star argues that PNC's attorneys' fees are unreasonable, excessive, and duplicative. (Dkt. 143 at 13-14). Five-Star contests the fees because PNC retained three partners for its appeal, at least one of those partners billed 29 hours at $860 per hour (including for

---

[1] Five-Star's contention that the later amendments to the Line of Credit Agreement do not provide a basis for indemnification (*see* Dkt. 143 at 9-13; Dkt. 70, ¶¶ 61-69) lack merit because the Sweep Rider Amendment was "incorporated into and made part of" the Line of Credit Agreement (Dkt. 140-2 at 14), and the parties' March 3, 2020, Amendment was "incorporated into each of the Loan Documents." (*Id.* at 26).

[2] Five-Star's assertion that the Court must strictly construe the indemnification provision and any ambiguity against PNC does not change the outcome. (*See, e.g.*, Dkt. 143 at 9). Both indemnification provisions are unambiguous, and the Court's decision rests on a strict construction of their language. *See supra* at 2; *Bituminous*, 2015 IL App (2d) 140292, ¶ 8; *Charter Bank*, 223 Ill. App. 3d at 925; *Bates*, 78 Ill. App. 3d 153.

research), junior associates conducted duplicative research, and administrative employees billed for tasks like e-filing. (*Id.*)

"In determining reasonable attorney fees, Illinois courts conduct a multifactor analysis. Relevant factors include 'the skill and standing of the attorney, the nature of the case, the novelty and difficulty of the question at issue, the amount and importance of the subject matter, the degree of responsibility, the usual and customary charges and the benefits to the client.'" *Kieken v. City of Joliet*, 2023 IL App (3d) 220392, ¶ 28 (quoting *Black v. Iovino*, 219 Ill. App. 3d 378, 396 (1991)).

Five-Star asserted six counts against PNC stemming from multiple contracts with millions of dollars at stake. In response, PNC retained skilled attorneys. The issues were significant. A loss would cost PNC millions of dollars. *Id.* This litigation required PNC's attorneys to work from July 11, 2023, through March 15, 2024. The work defending against Five-Star's six counterclaims was substantive. It included motion to dismiss briefing, appellate briefing, oral argument before the Seventh Circuit, and motions for fees. (Dkt. 140 at 12-14); (Dkt. 144 at 4-6). Under these circumstances, incurring $205,644.00 from eight attorneys from nearly a year's worth of work is reasonable. Additionally, PNC retaining appellate attorneys—to defend against Five-Star's appeal—is not unreasonable. Appellate practice requires specialized knowledge and preparation. The hours the appellate attorneys billed are not excessive given the complexity of the issues. Nor is overlap of certain tasks a red flag. Each attorney often carries a distinct role on a case. As for research, that is an ongoing task. Laws change. New theories require additional vetting. Tasking a junior associate to run down additional law, double check whether new cases have been published, or determine the viability of a new argument is reasonable—and indeed often ethically mandatory. Lastly, administrative assistance from paralegals and docket specialists to facilitate e-filing is

integral to the litigation process—and substantially cheaper than having an attorney do those same tasks. Taking all this together, the Court finds PNC's $205,644 attorneys' fees reasonable. *See Gambino v. Boulevard Mortg. Corp.*, 398 Ill. App. 3d 21, 67 (2009) (finding $187,196 in attorneys' fees from three attorneys reasonable).

## CONCLUSION

PNC's motion for fees exclusive of prejudgment interest is granted. (Dkt. 140). Five-Star is hereby ordered to pay PNC $205,644 within two weeks of this order.

Virginia M. Kendall
United States District Judge

Date: April 2, 2026